WILL, Appellant, vs. WEST SIDE RAILROAD COMPANY, Repondent.

*December 8, 1892 — January 10, 1893.*

*Street railways: Negligence: Injury to person: Court and jury.*

Upon the evidence in an action for injuries sustained in a collision between defendant's electric car and plaintiff's wagon,— tending to show, among other things, that while plaintiff was driving on defendant's track with his heavily loaded wagon he saw the car approaching and tried to turn out, but owing to the slipperiness of the rails his team was unable to pull the wagon from the track; and that the motorman of the car saw the plaintiff trying to get off the track, and his difficulty in doing so, in ample time to have stopped the car,— it is *held* that it was error to direct a verdict in favor of the defendant.

APPEAL from the Superior Court of *Milwaukee* County.

Action to recover damages for personal injuries alleged to have been sustained by reason of the negligence of the defendant's employees. The answer alleged contributory negligence on the part of the plaintiff. At the close of the testimony the court directed the jury to return a verdict in favor of the defendant. From the judgment entered on such verdict the plaintiff appeals. Other facts are stated in the opinion.

For the appellant there was a brief by *Rose & Bell*, and oral argument by *A. W. Bell*.

For the respondent there was a brief by *Turner & Timlin*, of counsel, and *Danforth Becker*, attorney, and oral argument by *W. J. Turner*.

ORTON, J. On the conclusion of the testimony, and on the motion of the respondent's counsel, the court directed a verdict in favor of the defendant, and judgment was rendered accordingly. If the testimony of the plaintiff and his witnesses made a clear *prima facie* case in his favor,

Will vs. West Side R. Co.

then it follows that the court erred in so directing a verdict. If the testimony of the defendant tends to rebut such *prima facie* case, then it is quite likely a case of contradictory or conflicting evidence, and it should be submitted to the jury.

The testimony of the plaintiff and his witnesses is not long or difficult to understand. On the 9th day of January, 1891, at 4 o'clock P. M., the plaintiff and four other men were driving their teams to wagons loaded with large stone, on Wells street, in the city of Milwaukee, going east. A short distance back the plaintiff drove in and upon the south track of the defendant's railroad, and was driving along on that track. The four other teams were being driven on the street outside and south of said track, following each other. One or two of said teams were nearly opposite the team of the plaintiff, and the others were following closely behind. They saw an electric car of the defendant company, when it was about two or three blocks off, coming towards them with considerable speed on the track on which the plaintiff was driving. The plaintiff at once turned his team off the track north, and tried to have them pull the wagon off also; but there was snow and ice on the track and rail, which made the rail slippery, and the left forward wheel of his wagon slid along the rail, and his team was unable to pull the wagon off. He whipped and urged his team, and did what he could to get them to pull the wagon over, but without success. The wheel glided along the rail in this way from 75 to 100 feet. The plaintiff was sitting on one of the large stones on his wagon, and as soon as he saw the car coming towards him he at once did everything in his power, and continued to do so, to get his wagon off the track. He could not have turned to the right, and attempted to drive off the track on that side, on account of the other teams and loaded wagons being in his way. If he had attempted to drive off the track on that side,

Will vs. West Side R. Co.

and there had been nothing in his way, there was no cer-
tainty that his wheel would not have slid along the rail on
that side just the same. Indeed, the probability was that
he would not have been more successful in driving off on
that side than on the other. The motorman of the car,
two blocks off, could have seen, and pr▓ ▓ly did see, that
there was a wagon loaded with stone ▓ ▓ driven on his
car track, and that the driver was tryi▓ ▓t his wagon
off the track. He could have seen, a▓▓ ▓bly did see,
that the horses were turned clear off the track north, and
were trying to pull the wagon over and off the track. The
right wheel of the wagon and that corner of the load were
directly in front of him. He must have known when near,
and in time to stop his car, what the trouble was, and that
probably the plaintiff would not be able to get his wagon
off the track in time for him to pass. The motorman, how-
ever, did not stop the car, or even lessen its speed, but
drove ahead and square against the right wheel and corner
of the loaded wagon, which drove the wagon and horses,
with the plaintiff sitting on the load, several feet to the
north of the track in a general wreck, and the plaintiff was
taken out from under one of the wagon wheels, apparently
lifeless. This is the testimony of the plaintiff and the four
teamsters who were with him, with scarcely any disagree-
ment. One of the teamsters did say that the plaintiff
might have turned to the right, as no team was opposite to
him; but all the other witnesses testified that two teams
were nearly opposite the plaintiff, and one of them testified
that he was talking to the plaintiff, who was on the north
side of him. But that was not material. The plaintiff had
a right to exercise his own best judgment as to which side
he should turn out, and there is no evidence that he could
have been more successful on one side than on the other.
At least he did not know that he could, and after he had
attempted to turn out on the north side it was too late to

try the other side, even if there had been no obstruction on that side.

It may be proper to say that the testimony of the motorman, Cummings, does not make a good case for the company. He saw the trouble with the plaintiff's wagon, with the wheel sliding along the rail, and then put all his force on the brakes when he got about twenty feet from Thirty-second street, the place of the accident, and stopped the car just as it struck the wagon. He saw the plaintiff trying to get off the track when he got to Twenty-ninth street, nearly three blocks away; and he thought the plaintiff got his wheel nearly over once, and then pulled it back again. So the motorman must have understood the reason why the plaintiff could not get off the track, in ample time to have stopped the car before it struck the wagon. It appears that he might, and should, have stopped the car before it came so dangerously near the wagon as twenty feet.

But I do not intend to pass upon the merits of the whole case on the conflicting evidence. It is sufficient that the plaintiff's evidence made a good *prima facie* case in his favor, for the jury would have had the right to believe that evidence rather than the conflicting testimony on behalf of the defendant. The plaintiff's evidence showed very clearly that the motorman was guilty of nearly, if not quite, gross negligence, and that the plaintiff used all reasonable means, under the circumstances, to get out of the way of the approaching car and avoid a collision, and was unable to do so.

The plaintiff cannot be charged with negligence in driving on the track, for he had a lawful right to use any part of the street to drive on. He could only be held liable for not getting off the track and out of the way of the car when it came along and had the prior right to the use of the track. This he tried his best to do, and would have done

so but for the accident that the rails of the track were wet and slippery and held his wheel by reason of the ice and snow. According to the evidence, the rails of the track are not in all places so high above the ground as at this place, and would not catch and hold a wagon wheel in this manner. There is no evidence that the plaintiff had any reason to anticipate or expect that he would be unable to drive off the track at any time, and get out of the way of the car, when he drove upon the track at this time. What evidence the defendant may be able to introduce on another trial to rebut the case made by the plaintiff, or to contradict his testimony and that of his witnesses who were present at the time and place of the accident, we know not; and the jury may be able to reconcile the conflicting evidence, and they have the right to believe the testimony on one side or the other. I do not wish to say any more than necessary to affect the result of another trial. This was evidently not a case for the court to direct a verdict for the defendant. It was a very proper one to be submitted to the jury.

*By the Court.*— The judgment of the superior court is reversed, and the cause remanded for a new trial.